GREGORY PEACOCK #277669
gregorypeacockesq@gmail.com
LAW OFFICE OF GREGORY PEACOCK
4063 Birch St., Ste. 100
Newport Beach, CA 92660
(949) 292-7478

Attorneys for Plaintiff Eric Kretschmar

NATHALIE ADOURIAN, CITY ATTY. #274599
KIRSTEN B. SHEA, SR. ASSIST. CITY ATTY. #241469
kshea@cityoforange.org, gsevilla@cityoforange.org
CITY OF ORANGE
300 East Chapman Avenue
Orange, California 92866
(714) 744-5580

Attorneys for Defendants City of Orange, Donovan Perry, Stephen Aguirre, and Michael Rodriguez

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC KRETSCHMAR,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ORANGE; DONOVAN PERRY; STEPHEN AGUIRRE; MICHAEL RODRIGUEZ; and DOES 1 through 10, inclusive,<br><br>Defendants, | CASE NO.: 8:26-cv-01591-JVS-PD<br><br>**JOINT RULE 26(f) REPORT**<br><br><u>Scheduling Conference</u><br>Date: October 5, 2026<br>Time: 10:30 AM<br>CrtRm: 10C |

**TO THE HONORABLE JAMES V. SELNA:**

The Court's August 7, 2026, Order (Dkt. No. 13) set a Scheduling Conference in this matter for October 5, 2026. Pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 26-1, and the Court's, the parties have conferred regarding a discovery plan and other related topics. The parties respectfully submit this Joint 26(f) Report.

**A. <u>SYNOPSIS</u>**

**Plaintiff Contends:**

During the evening of Friday, March 21, 2025, Plaintiff Eric Kretschmar ("KRETSCHMAR") was driving his vehicle, in the area near the Orange Circle in the City of Orange. As KRETSCHMAR drove through the intersection near West Chapman Avenue and North Olive Street, he observed a marked Orange Police Department patrol vehicle operated by Defendant Orange Police Department Officer PERRY. KRETSCHMAR then parked his vehicle in a parking lot located near South Olive Street. PERRY followed KRETSCHMAR's vehicle into the parking lot.

After parking, KRETSCHMAR exited his vehicle. He had his earbuds in and was listening to music. He had his wallet and cellphone in his hands. KRETSCHMAR then walked out of the parking lot. Without any warning, without any verbal command that KRETSCHMAR could hear through his earbuds and without giving KRETSCHMAR any meaningful opportunity to comply with any order, PERRY grabbed KRETSCHMAR from behind.

According to PERRY's police report, he grabbed KRETSCHMAR's left arm and told him to sit on the ground. PERRY reported that KRETSCHMAR "tensed up" and "refused to comply." Both allegations are not true. Both misrepresentations were knowingly false and made in an effort to induce the district attorney's office into prosecuting KRETSCHMAR.

PERRY then pushed KRETSCHMAR to the ground. PERRY then admitted to delivering approximately two knee strikes to the left side of KRETSCHMAR's

abdomen, followed by approximately two punches to the right side of KRETSCHMAR's abdomen, followed by at least two punches to the left side of KRETSCHMAR's face. At the time PERRY was delivering these blows, KRETSCHMAR was on the ground and posed no threat of harm to anyone.

Defendant Orange Police Department Officer AGUIRRE then arrived on scene while KRETSCHMAR was on the ground and PERRY was punching KRETSCHMAR. According to AGUIRRE's police report, upon arrival he observed PERRY struggling with KRETSCHMAR. Despite the fact that KRETSCHMAR was restrained and on the ground, AGUIRRE delivered a knee strike with his right knee to KRETSCHMAR's upper back and two closed-fist punches to KRETSCHMAR's left chest area. Defendant Orange Police Department Officer RODRIGUEZ also arrived on scene while KRETSCHMAR was on the ground. According to RODRIGUEZ' police report, RODRIGUEZ placed his "entire bodyweight" onto his right knee, pressing it into KRETSCHMAR's left stomach area to prevent KRETSCHMAR from rolling. RODRIGUEZ then applied an arm control hold to assist in handcuffing.

KRETSCHMAR was then placed in handcuffs. Throughout the entirety of the altercation, KRETSCHMAR made no threatening movements toward any officers, was unarmed, and did not attempt to flee or resist the officers. KRETSCHMAR was then transported to OC Global Hospital in Santa Ana, California, for emergency medical treatment.

The defendant officers then searched KRETSCHMAR's vehicle which revealed no weapons, no illegal narcotics, and no alcohol. There was no lawful justification to search KRETSCHMAR's vehicle.

Once KRETSCHMAR was cleared for booking by OC Global Hospital, KRETSCHMAR was taken to Orange County Jail for an alleged violation of Cal. Penal Code sections 69 and 148(a)(1). The defendant officers also then unlawfully had

KRETSCHMAR's vehicle towed, causing KRETSCHMAR to pay tow and impound fees. There was no lawful justification to cause KRETSCHMAR's vehicle to be towed.

Defendants PERRY, AGUIRRE and RODRIGUEZ then authored bogus police reports all of which intentionally mischaracterized KRETSCHMAR's conduct as violent and resistant. All of which is not true. Defendants PERRY, AGUIRRE and RODRIGUEZ made these misrepresentations in their reports in an effort to induce the Orange County District Attorney's Office into prosecuting KRETSCHMAR for violating Cal. Penal Code sections 69 and 148(a)(1). Defendants PERRY, AGUIRRE and RODRIGUEZ wanted to induce the Orange County Sheriff's Department into prosecuting KRETSCHMAR for violating Cal. Penal Code sections 69 and 148(a)(1) because Defendants PERRY, AGUIRRE and RODRIGUEZ wanted to prevent KRETSCHMAR from seeking redress for the constitutional violations that he endured at their hands. It is widely known among law enforcement agencies in California that conviction for violating Cal. Penal Code sections 69 or 148(a)(1) will bar a person from suing police officers for misconduct.

Relying upon the misrepresentations made in the reports authored by PERRY, AGUIRRE and RODRIGUEZ, the Orange County District Attorney's Office filed criminal charges against KRETSCHMAR for allegedly violating Cal. Penal Code sections 69 and 148(a)(1).

The criminal charges were ultimately dismissed in the interest of justice.

**Defendant Contends:**

Defendants contend that Officer Donovan Perry observed Plaintiff driving through the intersection near West Chapman Avenue and North Olive Steet in the City of Orange at approximately 11:30 p.m. on March 21, 2023. Officer Perry initiated a traffic stop of Plaintiff's vehicle for the observed violation of California Vehicle Code section 5200(a). Plaintiff pulled over his vehicle into a parking lot. Officer Perry attempted to contact Plaintiff who then unlawfully exited his vehicle and ignored

Officer Perry's direction to stop or return to his vehicle. When Plaintiff exited the vehicle, he appeared to remove a device from his right ear when he was verbally engaged by Officer Perry who was in full police uniform and driving a marked police vehicle. Officer Perry's overhead emergency lighting was fully activated and clearly visible.

Officer Perry engaged in conversation with Plaintiff to include stay in your vehicle, you are getting pulled over, to which plaintiff replied, "I didn't do anything" and "Don't talk to me" as he walked away from Officer Perry. Officer Perry told Plaintiff to get back in his vehicle and that he was being detained for a traffic stop. Plaintiff then became agitated and refused to get back in his vehicle. Plaintiff knowingly or willfully resisted and disobeyed Officer Perry's commands and obstructed the lawful traffic stop by refusing to return to his vehicle. Plaintiff tried to walk away from Officer Perry in the parking lot where the traffic stop occurred. Officer Perry gave multiple commands for Plaintiff to sit down. Plaintiff spoke clear English and verbally interacted with Officer Perry.

Officer Perry advised Plaintiff that he was being pulled over for a traffic stop and Plaintiff knowingly disagreed with the commands. Officer Pery was the only officer on scene at this time and was struggling to maintain control of Plaintiff. Plaintiff continued to pull away from Officer Perry and refused to comply with commands. Officer Perry pushed Plaintiff to the ground and attempted to handcuff him. Plaintiff continued to pull away from Officer Perry, and he tried to stand up. Additionally, Plaintiff's vehicle was behind them as they struggled, and it still had not been searched for additional suspects. Officer Perry was alarmed at how desperately Plaintiff was attempting to flee from him and Officer Perry was worried that Plaintiff was going to seriously hurt or kill him. Officer Perry delivered approximately two knee strikes to the left side of Plaintiff's abdomen in an attempt to get him to comply, hoping he would give up and put his hands behind his back. Instead, Plaintiff rolled onto his back and continued to ignore Officer Perrys's commands.

Officer Perry needed to get Plaintiff back onto his stomach so he could try to gain control of his hands to handcuff him. Officer Perry ordered Plaintiff to get onto his stomach, but he did not comply. Officer Perry punched Plaintiff about two times on the right side of his abdomen in an attempt to gain compliance and Plaintiff continued to refuse. Plaintiff continued to lie on his back, so Officer Perry punched him one time on the left side of his face, which allowed him to roll Plaintiff back on his stomach.

Officer Perry gained control of Plaintiff's right hand, but Plaintiff continued to conceal his left hand under his body. Officer Perry feared Plaintiff was possibly reaching for a weapon since he had not been searched. Officer Perry punched Plaintiff one more time on the left side of his face to stop him and try to gain control of his left arm. At this time, Officer Stephen Aguirre and Officer Michael Rodriguez arrived on scene and assisted in handcuffing Plaintiff's left hand, which he was still pulling/resisting. During this time period, Officer Perry had repeatedly told Plaintiff to stop resisting.

Officer Aguirre saw Officer Perry and Plaintiff fighting on the ground and that Officer Perry had one handcuff on Plaintiff's right hand and was struggling to place the other cuff onto his left hand. Officer Aguirre saw that Plaintiff was resisting by pulling away from Officer Perry's grip and rolling onto his hands underneath him. Due to the fact that Plaintiff was actively resisting, and his person had not been searched, Officer Aguirre was in fear that Plaintiff could possibly be reaching for a weapon on his person to use against him or other officers. At this time, Officer Aguirre issued a knee strike with his right knee to Plaintiff's upper back, and two closed fist strikes to his left chest area as a distraction blows to stop Plaintiff from possibly grabbing a weapon. At this time, Officer Rodriguez arrived and with the three officers together, they were able to place Plaintiff's left hand in handcuffs detaining him.

When Officer Rodriguez arrived on scene, he saw Officer Perry on the ground fighting with Plaintiff to the rear of 139 S. Olive Street. Officer Rodriguez observed Officer Perry had one handcuff applied to Plaintiff's right arm and was struggling to

gain control of Plaintiff's left arm due to him pulling away from Officer Perry. At that time, Officer Rodriguez told Plaintiff to give him his left arm in order to place his left arm into handcuffs to which he did not, and Plaintiff started to pull his arm towards the front of his waist and attempted to roll onto his hands. Due to the unknown fact whether Plaintiff was armed with any weapons and he not yet being searched, Officer Rodriguez placed his entire bodyweight onto his right knee and onto Plaintiff's left stomach area to prevent him from rolling onto his hands. Officer Rodriguez then placed Plaintiff's left arm in a control hold in order to pull Plaintiff's arm away from his waist and to assist Officer Perry and Officer Aguirre in placing Plaintiff's left arm into handcuffs.

Defendants conducted an inventory search of Plaintiff's vehicle for it to be towed from the scene for safekeeping.

## B. DESCRIPTION OF KEY LEGAL ISSUES

The parties anticipate the issues in this case will include at least the following:

1. Whether the defendant officers had probable cause to arrest Plaintiff.
2. Whether the force used by the defendants was unreasonable / excessive.
3. Whether the defendant officers maliciously prosecuted Plaintiff.
4. Whether the defendant officers deliberately fabricated evidence against Plaintiff.
5. Whether the defendant officers are entitled to qualified immunity.
6. The extent of Plaintiff's damages, if any.
7. Whether Defendants had a policy, custom, or practice that was the "moving force" of the constitutional deprivation. (Monell v. Department of Social Services 436 U.S. 658, 694-95 (1978); Villegas v. Gilroy Garlic Festival Ass'n 541 F.3d 950, 957 (9th Cir. 2008).) Whether that action, pursuant to official governmental policy, caused his injuries. (Connick v. Thompson 131 S. Ct. 1350, 1359 (2011); Monell 436 U.S. at 691.)

8. Whether Defendants' official conduct (1) violated a constitutional right and, if so, (2) the right was clearly established in light of the specific context of this case. (Pearson v. Callahan 129 S.Ct. 808, 818 (2009).)

**C. DAMAGES**

Plaintiff is seeking compensatory damages in the form of emotional distress and mental anguish, physical pain and suffering, medical expenses and legal fees in excess of $1,000,000. Plaintiff is also seeking punitive damages.

**D. INSURANCE**

The City is self-insured pursuant to Government Code Section 990.4 for approximately $350,000 and the City has insurance coverage with the California Insurance Pool Authority which is a joint powers authority composed of 14 member cities.

**E. MOTIONS - STATEMENT OF THE LIKELIHOOD OF MOTIONS SEEKING TO (I) ADD OTHER PARTIES OR CLAIMS OR (II) FILE AMENDED PLEADINGS OR (III) TRANSFER VENUE**

**Plaintiff:**

At this time Plaintiff does not anticipate filing any motions to add parties or claims or to amend the pleadings. Plaintiff will make a determination whether such motions are necessary once plaintiff's counsel reviews defendants' disclosures and discovery responses.

**Defendant:**

None.

**F. DISCOVERY AND EXPERTS**

**Initial Disclosures**

The parties have agreed to exchange initial disclosures on or before October 19, 2026, pursuant to Federal Rules of Civil Procedure 26(a)(1)(C).

**Phase, Order, and Subjects of Discovery**

The parties do not propose conducting discovery in phases or limiting discovery

of any issue. The issues and facts surrounding this incident are straight forward and the parties do not anticipate the need for protracted discovery procedures

**Discovery Conducted to Date**

No party has served any written discovery. No depositions have been noticed.

**Limitations on Discovery**

The parties agree that the ten-deposition limit for each party pursuant to Federal Rules of Civil Procedure 30(a)(2) should be sufficient. The parties further agree that each expert witness who submits a report in this action may be deposed and that such depositions do not count toward the limit of ten (10) depositions.

**Timing of Expert Witness Disclosure**

The timing for expert witness disclosures shall be 90 days before the date set for trial, i.e. December 14, 2027.

The parties will exchange initial expert disclosures on September 15, 2027.

The parties will exchange rebuttal expert disclosures on October 15, 2027.

**Discovery Plan**

The parties submit their respective discovery plans as follows:

**Plaintiff:**

Plaintiff intends to take the depositions of the involved police department officers as well as any percipient witnesses. Plaintiff also intends to serve the City of Orange with requests for production of documents related to the arrest of Plaintiff as well as the prosecution of Plaintiff.

**Defendants:**

Defendants plan to take the deposition of Plaintiff.

Defendants will serve interrogatories and request for production, only if necessary, after it reviews the information provided by Plaintiff in his Rule 26 disclosures.

**G. DISPOSITIVE MOTIONS**

**Plaintiff:**

At this time, Plaintiff does not anticipate filing any dispositive motions.

**Defendants:** Defendants will file a motion for summary judgment, or in the alternative summary adjudication.

## H. SETTLEMENT AND SETTLEMENT MECHANISM

The Parties have not discussed settlement and propose ADR Procedure No. 2 (referral to the Court Mediation Panel).

## I. TRIAL ESTIMATE

The Parties estimate a 4-day jury trial.

Plaintiff intends to call approximately five witnesses at trial. Defendants plan to call approximately 4 witnesses at trial.

## J. TIMETABLE

Please see Exhibit A below.

## K. OTHER ISSUES

None.

## L. CONFLICTS

Not applicable.

## M. PATENT CASES

Not applicable.

## N. MAGISTRATES

The parties prefer not to have a Magistrate Judge preside over this matter.

Dated: September 22, 2026

LAW OFFICE OF GREGORY PEACOCK

By: /s/
Gregory Peacock
Attorneys for Plaintiff

Dated: September 22, 2026

CITY OF ORANGE
Nathalie Adourian, City Attorney

By: *Kirsten B. Shea*

Kirsten B. Shea, Sr. Assistant City Attorney
Attorneys for Defendants

# **EXHIBIT A**

| Matter | Time/ Weeks Before Trial | Plaintiff's Request | Defendants' Request | Court Order |
|---|---|---|---|---|
| Trial date (jury)<br>Estimated length: 4 days | 8:30 a.m. (Tuesdays) | 1/18/28 | 1/18/28 | |
| [Court trial]: File Findings of Fact and Conclusions of Law and Summaries of Direct Testimony | -1 | 12/6/27 | 12/6/27 | |
| Final Pretrial Conference; Hearing on Motions in Limine; File Agreed Upon Set of Jury Instructions and Verdict Forms and Joint Statement re Disputed Instructions and Verdict Forms; File Proposed Voir Dire Qs and Agreed-to Statement of Case | 11:00 a.m. Monday<br><br>-2 | 11/29/27 | 11/29/27 | |
| Lodge Pretrial Conf. Order; File Memo of Contentions of Fact and Law; Exhibit List; Witness List; Status Report re Settlement | -3 | 11/15/27 | 11/15/27 | |
| Last day for hand-serving Motions in Limine | -6 | 11/1/27 | 11/1/27 | |
| Last day for hearing motions | 1:30 p.m. (Mondays)<br><br>-7 | 10/25/27 | 10/25/27 | |
| Last day for hand–serving motions and filing (other than Motions in Limine) | -11 | 9/27/26 | 9/27/26 | |
| Non-expert Discovery cut-off | -15 | 8/30/27 | 8/30/27 | |

## ADDITIONAL MATTERS TO BE DETERMINED AT SCHEDULING CONFERENCE

L.R. 16-14 Settlement Choice: [ ] CT/USMJ [ X ] Court Mediation Panel [ ] Private ADR

| **Matter** | **Weeks Before Trial** | **Plaintiff's Request** | **Defendant's Request** | **Court Order** |
|---|---|---|---|---|
| Expert discovery cut-off | -7 | 10/25/27 | 10/25/27 | |
| Rebuttal Expert Witness Disclosure | 30 days after the other party's disclosure | 10/15/27 | 10/15/27 | |
| Opening Expert Witness Disclosure [See FRCP 26(a)(2)] | 90 days before trial | 9/15/27 | 9/15/27 | |
| Last day to conduct Settlement Conference | | | | |
| Last day to amend pleadings or add parties | | | | |